(158 App. Div. 477.)

RINTELEN v. SCHAEFER et al.

(Supreme Court, Appellate Division, Second Department.　October 3, 1913.)

1. WILLS (§§ 55, 166*)—CONTEST—SUFFICIENCY OF EVIDENCE—TESTAMENTARY CAPACITY—UNDUE INFLUENCE.

In proceedings to contest a will, evidence *held* insufficient to sustain a verdict that the testatrix was mentally incompetent when she made the will, and that it was obtained by undue influence.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 137–158, 161, 374; Dec. Dig. §§ 55, 166.*]

2. WILLS (§ 52*)—TESTAMENTARY CAPACITY—PRESUMPTIONS—JUDICIAL DECLARATION OF COMPETENCY.

Where one, who had previously been declared incompetent to transact her business affairs, was thereafter judicially declared competent three years before she executed a will, the presumption of her competency, resulting from such judicial declaration, could only be rebutted by showing a change in her mental condition between that time and the date of the will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 101–110; Dec. Dig. § 52.*]

3. WILLS (§ 158*)—VALIDITY—UNDUE INFLUENCE—WEIGHT OF EVIDENCE.

The mere fact that testatrix resided, for some time prior to the making of a will, with the relatives to whom she gave the most of her property is no evidence of their undue influence, without some proof of its exercise by them.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 385, 386; Dec. Dig. § 158.*]

4. WILLS (§§ 52, 163*)—CONTEST—INCOMPETENCY—UNDUE INFLUENCE—BURDEN OF PROOF.

In proceedings to contest a will, the burden of proving the mental incompetency of the testatrix or undue influence upon her is upon the contestant.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 101–110, 388–402; Dec. Dig. §§ 52, 163.*]

5. WILLS (§ 53*) — TESTAMENTARY CAPACITY — ADMISSIBILITY OF EVIDENCE — ADJUDICATION OF INSANITY.

The depositions and papers in a proceeding in which a woman was adjudged incompetent to manage her affairs are not admissible in proceedings to contest her will, where she had subsequently been judicially declared to be restored to sanity prior to the execution of the will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 111, 112, 120–130; Dec. Dig. § 53.*]

6. WILLS (§ 53*)—TESTAMENTARY CAPACITY—ADMISSIBILITY OF EVIDENCE—INSANITY OF RELATIVES.

Evidence of the insanity of the ancestors or other relatives of testatrix is admissible only in support of proof of acts of an insane character on the part of the testatrix.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 111, 112, 120–130; Dec. Dig. § 53.*]

7. WILLS (§ 400*)— PROBATE—REVIEW—ADMISSION OF EVIDENCE—CURE BY STRIKING OUT.

Error in the admission of evidence as to the insanity of a brother of testatrix, where there was no evidence of insane acts on her part, is not

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cured by merely striking out the testimony without instructing the jury to disregard it.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 869–873; Dec. Dig. § 400.*]

3. WITNESSES (§ 199*)—PRIVILEGED COMMUNICATIONS—ATTORNEY AND CLIENT— COMMUNICATIONS PRIOR TO EMPLOYMENT.

On the contest of a will on the ground of incapacity and undue influence, testimony by the attorney for the testatrix as to conversations with her prior to his employment as such attorney is not inadmissible, under Code Civ. Proc. § 835, relating to communications between attorney and client.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 749–751, 766, 767; Dec. Dig. § 199.*]

Appeal from Trial Term, Queens County.

Action by Joseph C. Rintelen against Rose D. Schaefer and others. Judgment for the plaintiff, and all the defendants except one appeal. Reversed and remanded.

See, also, 153 App. Div. 916, 138 N. Y. Supp. 1139.

Argued before JENKS, P. J., and BURR, THOMAS, RICH, and STAPLETON, JJ.

M. Linn Bruce, of New York City, for appellants.

Cormly J. Sproull, of New York City (John McG. Goodale, of New York City, on the brief), for respondent.

RICH, J. Elizabeth Rintelen died testate at Woodhaven, Long Island, August 29, 1910, leaving her surviving the plaintiff in this action, a nephew, and the defendants, her cousins (with whom she had lived and been cared for during the six years preceding her death), her sole surviving relatives. By her last will and testament she gave to the plaintiff the sum of $1,000; to the Woodlawn Cemetery Association for the care and maintenance of her father's burial plot, in which she directed her body interred, $400. The balance of her personal property she bequeathed to the appellant Rose D. Schaefer, and the rest, residue, and remainder of her estate to the appellants, share and share alike, stating that the devises and bequests to them were "in recognition and appreciation of their kindness to, and in recompense of their care and trouble of me in the past and particularly since I have been at their home." After a contest instituted by plaintiff, the will was admitted to probate on December 23, 1910. This action was commenced on January 14th following, and has been here before (152 App. Div. 727, 137 N. Y. Supp. 527). Upon the first trial the learned trial court submitted to the jury two questions:·

"First. Was Elizabeth Rintelen at the time of the execution of the paper writing in question, on December 11, 1908, of sound mind and memory, and mentally capable of making a will? Second. At the time of the execution of such paper writing was she under any restraint or influence exerted upon her by any other person or persons, to such an extent that the paper was not an expression of her will, but was in reality the will of such other person or persons?"

The jury answered the first question in the affirmative, and the second in the negative. Judgment was accordingly directed and entered,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

adjudicating that said written instrument was the last will and testament of Elizabeth Rintelen. Upon appeal the judgment and the order denying plaintiff's motion for a new trial were reversed, upon the ground that the trial court committed reversible error in the admission of evidence over the plaintiff's objections. Upon the second trial the same two questions were submitted to the jury, who answered the first in the negative and the second in the affirmative. Judgment was entered, adjudging that the instrument admitted to probate on December 23, 1910, as the last will and testament of Elizabeth Rintelen, deceased, as a will of real and personal property, "is not in truth and in fact the last will and testament of the said Elizabeth Rintelen, deceased," and annulling and setting aside said probate. From such judgment, and from an order denying their motion for a new trial made on the minutes, all of the defendants, with the exception of the Woodlawn Cemetery Association, appeal.

[1] Up to the year 1904 the deceased was an active and energetic business woman, conducting a grocery business for herself, and personally managing several pieces of improved real property of which she was the owner. During the year 1904 she became ill, as the result of passing through the climacteric period, and became physically and mentally incompetent to manage her affairs. On August 3, 1904, she was judicially declared incompetent, and Frank Schaefer, the father of the appellants, was appointed committee of her person and estate. Her mental condition proved to be temporary only, and on December 28, 1905, upon her own petition concurred in by her committee, she was declared competent, and thereafter managed her affairs until her death in August, 1910. Her health continued to improve, and while she never recovered her full strength, she seems to have lived happily with the appellants and attended to her business affairs without assistance. At the time she was declared incompetent she was examined by Dr. McGuire, her father's family physician for years, Dr. Gilday, and Dr. Spitzka, an alienist. When she was restored she was examined by the first two of the above-named physicians, Dr. MacFarland, and Dr. Allan McLane Hamilton, who was appointed by the court to examine and report as an expert. Each of these four physicians, after a careful and thorough examination, testified on this trial to her competency and soundness of mind and memory in December of 1905, and her physician during the last six years of her life, Dr. MacFarland, who saw her last the day before she died, testified to her mental condition and soundness of mind to the time of her death.

The trial court charged the jury that from the time of her restoration in 1905 it was to be presumed that she was competent to manage herself and her affairs the same as if she had never been adjudged incompetent, but that such presumption might be overcome by proof to the contrary.

[2] There is a further presumption, namely, that the condition of sound mind and memory of the testatrix, established in 1905, continued until the contrary was clearly proven. To overcome this presumption, it was incumbent upon the plaintiff to produce convincing

proof of a change in the mental condition of the testatrix between December, 1905, when she was judicially declared competent and restored, and December 11, 1908, when her will was executed, and that she was not of sound mind at that time. I am unable to find any evidence even tending to prove any such change, or of any deterioration in her mental condition during the three years elapsing between her restoration and the execution of her will. She died two years after executing her will, from a disease which the evidence shows did not affect her mental condition.

In addition to the medical evidence and the legal presumptions flowing therefrom, and from the admission of the will to probate after a spirited contest, the defendants fortified their case by the evidence of 11 witnesses, who had known the testatrix for from 5 to 28 years and visited her repeatedly, that her mind was clear and normal after she recovered from her sickness in 1905, down to the time of her death. Their testimony covers her life for many years prior to her death, and particularly during the year she executed her will and the six years she resided with the appellants. In addition, the defendants introduced in evidence 170 checks, beginning May 11, 1906, and ending May 24, 1910, three months before her death, all of which were signed by testatrix, and all but 25 drawn and filled out by her in the conduct of her business.

[3] Against this mass of testimony the defendants called one medical expert, Dr. Spitzka, who had seen the deceased on one occasion only, in 1904, who testified in answer to a hypothetical question that, assuming the facts contained in such question to be true, the testatrix was, on December 11, 1908, the date she executed her will, "in a condition of chronic insanity"; and several other witnesses, some who had not seen testatrix for 7 to 20 years before her death, some whose testimony related to her acts during her sickness in 1904, some who had never spoken to her but once or twice, and whose opportunities of observing her were very limited, only two of whom testified that any acts of the testatrix impressed them as being irrational. The testamentary disposition of her property by testatrix does not tend to establish either incompetency or undue influence. She states the reasons for such disposition to be in recognition and recompense of the appellants for their kindness, care, and trouble in the past, and particularly during the six years she was in their home. It was in accord with her expressed intention, declared repeatedly before her sickness and long before she made her will. She had no other relatives save the plaintiff, against whom and his mother the evidence shows she had a strong antipathy, growing out of her belief that the latter had not properly treated her husband, brother of testatrix, and that her nephew, the plaintiff, born after his father's death, was like his mother, and that neither of them ever paid her any attention except when they wished to obtain money from her. It was shown that she had stated that the plaintiff was a spendthrift, and she would not leave him anything. The fact that for some four years before the making of her will she resided with appellants does not furnish any proof of the exercise by them of undue influence, and such influence cannot be assumed

to exist by reason of their opportunity to exact the same. It must be established affirmatively (Cudney v. Cudney, 68 N. Y. 148; Matter of McCarty, 141 App. Div. 816, 126 N. Y. Supp. 699; Matter of Van Ness, 78 Misc. Rep. 603, 139 N. Y. Supp. 485; Matter of Smith, 95 N. Y. 516, 522), and must be of a substantial nature (Thompson v. Peterson, 152 App. Div. 667, 137 N. Y. Supp. 635; Smith v. Keller, 205 N. Y. 39, 44, 98 N. E. 214). There is no proof of any act of a substantial nature or influence exerted, or attempted to be exerted, by any or either of the appellants tending to prove or warranting the inference of the exercise of undue influence over the testatrix.

[4] The burden was upon the plaintiff of establishing, by a fair preponderance of the evidence, the incompetency of the testatrix at the time she executed her will, or the exercise of undue influence amounting—as the Court of Appeals said in the Smith-Keller Case (supra)—to coercion and duress. This burden he failed to sustain, and the finding of the jury to the contrary is so greatly against the weight of the evidence that the judgment must be reversed for that reason.

In addition, the exceptions of the defendants to the admission and rejection of evidence during the trial present prejudicial and reversible error.

[5] The depositions of the physicians who examined the testatrix in the incompetency proceeding in 1904, and the papers connected with that proceeding, consisting of 23 exhibits, were clearly incompetent and inadmissible. Bookman v. Stegman, 105 N. Y. 621, 11 N. E. 376. The depositions were not offered as admissions of deponents, who were present in court and sworn as witnesses, or to contradict them, but as part of plaintiff's case, and upon the theory that they formed part of the res gestæ. The incompetency of the testatrix in 1904 was not controverted, and the effect of that adjudication as raising a presumption of continuing incompetency was wholly destroyed by the subsequent adjudication of December 28, 1905, of her competency. The matter presented by the exhibits had no relevancy to the questions involved.

[6, 7] Permitting Dr. McGuire to testify that a brother of the testatrix died a maniac was error, and, although later stricken out, I do not think the error was cured. The rule regulating the admission of such testimony is stated, in Pringle v. Burroughs, 185 N. Y. 375, 78 N. E. 150, 7 Ann. Cas. 264, to be that evidence of the insanity of ancestors or other relatives of a person whose sanity is called in question is not admissible, except in support of proof of acts or language of an insane character on the part of the individual whose mental capacity is in question. No such condition was presented when this evidence was received. In his charge the court did not direct the attention of the jury to the evidence stricken out, or instruct them that they were to disregard it. The admission of this evidence may well have given the jury the impression that insanity was hereditary and prevalent in the Rintelen family, and the learned court ought to have instructed them to disregard this evidence.

[8] The learned trial court was in error in sustaining the plain-

tiff's objection to the question asked Livett as to his conversations with the testatrix during the year preceding his becoming her attorney, upon the ground that the witness was precluded from testifying by the provisions of section 835 of the Code of Civil Procedure. That section relates only to communications made by a client to his attorney in the course of his professional employment, and prohibits the attorney from disclosing such communications, or his advice given thereon. The relation of attorney and client did not exist between the witness and the testatrix at the time to which the question was limited, and the question did not call for the disclosure of any communication by the witness. It was a question to be answered "Yes" or "No," and its object undoubtedly was to show the opportunity the witness had, by observation and conversation with testatrix, to qualify him to say whether such conversations and acts impressed him as being rational or irrational.

Judgment and order reversed, and a new trial granted, costs to abide the final award of costs. All concur.

