JOSEPH C. RINTELEN, Respondent, v. ROSE D. SCHAEFER, Individually and as Executrix, etc., of ELIZABETH RINTELEN, Deceased, and Others, Appellants, Impleaded with WOODLAWN CEMETERY, Defendant.

(Supreme Court, Second Department, October 3, 1913.)

WILL—ACTION TO SET ASIDE PROBATE—EVIDENCE NOT ESTABLISHING TESTAMENTARY INCAPACITY OR UNDUE INFLUENCE—BURDEN OF PROOF—RESTORATION OF TESTATRIX TO SOUND MIND—PRESUMPTION—EVIDENCE—DEPOSITIONS OF PHYSICIAN IN INCOMPETENCY PROCEEDING—INSANITY OF RELATIVES—CONVERSATIONS WITH ATTORNEY NOT ACTING AS SUCH.

Action to revoke the probate of a will upon the ground that the testatrix lacked testamentary capacity and that the instrument was the result of restraint and undue influence exercised by the beneficiaries. The testatrix, a woman of business ability, had been declared incompetent, but subsequently was judicially declared to be competent to manage her own affairs and she continued to do so for some years. The will was executed three years after her restoration to sound mind, and two years before her death. She left the bulk of her estate to persons, not relatives, with whom she lived and who had taken care of her. Evidence examined, and *held*, insufficient to establish lack of mental capacity or undue influence, and that a judgment entered upon a verdict should be reversed and a new trial granted.

A plaintiff alleging lack of testamentary capacity or undue influence is under the burden of establishing the same by a fair preponderance of evidence.

In an action to revoke the probate of a will upon the grounds aforesaid, the depositions of the physician who examined the testatrix in the proceeding in which she was declared to be incompetent are inadmissible, not being part of the *res gestae*.

The incompetency of the testatrix at that period not being con-

troverted, the presumption of continuing incompetency was wholly destroyed by the subsequent adjudication of competency.

So, too, in said action, it was error to allow a physician to testify that the brother of the testatrix died insane, and the error was not cured although the evidence was subsequently stricken out.

Evidence of the insanity of ancestors or other relatives of a person whose sanity is called in question is not admissible except in support of proof of acts or language of an insane character on the part of the individual whose mental capacity is in question.

Testimony as to conversations between an attorney at law and a decedent which took place at a time when he was not acting for the decedent in a professional capacity should not be excluded under section 835 of the Code of Civil Procedure.

APPEAL by the defendants, Rose D. Schaefer, individually and as executrix, etc., and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Queens on the 8th day of Februray, 1913, adjudging a certain paper which had been admitted to probate as the last will and testament of Elizabeth Rintelen, deceased, to be not in truth and fact the last will and testament of said deceased. Judgment was rendered on the decision of the court, certain questions having been submitted to the jury. Appeal is also taken from the order entered in said clerk's office on the 8th day of February, 1913, denying defendants' motion for a new trial made upon the minutes.

M. Linn Bruce [Gaston F. Livett with him on the brief], for the appellants.

Gormly J. Sproull [John McG. Goodale with him on the brief], for the respondent.

RICH, J.—Elizabeth Rintelen died testate at Woodhaven, L. I., August 29, 1910, leaving her surviving the plaintiff in this action, a nephew, and the defendants, her cousin (with whom she had lived and been cared for during the six years preceding her death), her sole surviving relatives. By her last will and testament she gave to the plaintiff the sum of $1,000;

to the Woodlawn Cemetery Association for the care and maintenance of her father's burial plot, in which she directed her body interred, $400. The balance of her personal property she bequeathed to the appellant Rose D. Schaefer, and the rest, residue and remainder of her estate to the appellants, share and share alike, stating that the devises and bequests to them were " in recognition and appreciation of their kindness to, and in recompense of their care and trouble of me in the past and particularly since I have been at their home." After a contest instituted by plaintiff the will was admitted to probate on December 23, 1910. This action was commenced on January fourteenth following, and has been here before. (152 App. Div. 727.) Upon the first trial the learned trial court submitted to the jury two questions: " *First.* Was Elizabeth Rintelen at the time of the execution of the paper writing in question, on December 11th, 1908, of sound mind and memory, and mentally capable of making a will? *Second.* At the time of the execution of such paper writing was she under any restraint or influence exerted upon her by any other person or persons, to such an extent that the paper was not an expression of her will, but was in reality the will of such other person or persons? " The jury answered the first question in the affirmative, and the second in the negative. Judgment was accordingly directed and entered adjudicating that said written instrument was the last will and testament of Elizabeth Rintelen. Upon appeal the judgment and the order denying plaintiff's motion for a new trial were reversed, upon the ground that the trial court committed reversible error in the admission of evidence over the plaintiff's objections.

Upon the second trial the same two questions were submitted to the jury, who answered the first in the negative and the second in the affirmative. Judgment was entered adjudging that the instrument admitted to probate on December 23, 1910, as the last will and testament of Elizabeth Rintelen,

deceased, as a will of real and personal property, " is not in truth and in fact the last will and testament of the said Elizabeth Rintelen, deceased," and annulling and setting aside said probate. From such judgment, and from an order denying their motion for a new trial made on the minutes, all of the defendants, with the exception of the Woodlawn Cemetery Association, appeal.

Up to the year 1904 the deceased was an active and energetic business woman, conducting a grocery business for herself and personally managing several pieces of improved real property of which she was the owner. During the year 1904 she became ill, as the result of passing through the climacteric period, and became physically and mentally incompetent to manage her affairs. On August 3, 1904, she was judicially declared incompetent, and Frank Schaefer, the father of the appellants, was appointed committee of her person and estate.

Her mental condition proved to be temporary only, and on December 28, 1905, upon her own petition, concurred in by her committee, she was declared competent and thereafter managed her affairs until her death in August, 1910. Her health continued to improve, and while she never recovered her full strength, she seems to have lived happily with the appellants and attended to her business affairs without assistance. At the time she was declared incompetent she was examined by Dr. McGuire, her father's family physician for years, Dr. Gilday and Dr. Spitzka, an alienist. When she was restored she was examined by the first two of the above-named physicians, Dr. MacFarland and Dr. Allen McLane Hamilton, who was appointed by the court to examine and report as an expert. Each of these four physicians, after a careful and thorough examination, testified on this trial to her competency and soundness of mind and memory in December of 1905, and her physician during the last six years of her life, Dr. MacFarland, who saw her last the day before she

died, testified to her mental condition and soundness of mind to the time of her death.

The trial court charged the jury that from the time of her restoration in 1905 it was to be presumed that she was competent to manage herself and her affairs the same as if she had never been adjudged incompetent, but that such presumption might be overcome by proof to the contrary. There is a further presumption, namely, that the condition of sound mind and memory of the testatrix, established in 1905, continued until the contrary was clearly proven. To overcome this presumption, it was incumbent upon the plaintiff to produce convincing proof of a change in the mental condition of the testatrix between December, 1905, when she was judicially declared competent and restored, and December 11, 1908, when her will was executed, and that she was not of sound mind at that time.

I am unable to find any evidence even tending to prove any such change, or of any deterioration in her mental condition during the three years elapsing between her restoration and the execution of her will. She died two years after executing her will from a disease which the evidence shows did not affect her mental condition.

In addition to the medical evidence and the legal presumptions flowing therefrom, and from the admission of the will to probate after a spirited contest, the defendants fortified their case by the evidence of eleven witnesses who had known the testatrix for from five to twenty-eight years and visited her repeatedly, that her mind was clear and normal after she recovered from her sickness in 1905, down to the time of her death. Their testimony covers her life for many years prior to her death, and particularly during the year she executed her will and the six years she resided with the appellants. In addition, the defendants introduced in evidence 170 checks, beginning May 11, 1906, and ending May 24, 1910, three

months before her death, all of which were signed by testatrix, and all but 25 drawn and filled out by her in the conduct of her business.

Against this mass of testimony the plaintiff called one medical expert, Dr. Spitzka, who had seen the deceased on one occasion only, in 1904, who testified in answer to a hypothetical question that, assuming the facts contained in such question to be true, the testatrix was, on December 11, 1908, the date she executed her will, " in the condition of chronic insanity; " and several other witnesses, some who had not seen testatrix for from seven to twenty years before her death, some whose testimony related to her acts during her sickness in 1904, some who had spoken to her but once or twice and whose opportunities of observing her were very limited, only two of whom testified that any acts of the testatrix impressed them as being irrational.   The testamentary disposition of her property by testatrix does not tend to establish either incompetency or undue influence.   She states the reasons for such disposition to be in recognition and recompense of the appellants for their kindness, care and trouble in the past, and particularly during the six years she was in their home.   It was in accord with her expressed intention declared repeatedly before her sickness and long before she made her will.   She had no other relatives save the plaintiff, against whom and his mother the evidence shows she had a strong antipathy, growing out of her belief that the latter had not properly treated her husband, brother of testatrix; and that her nephew, the plaintiff, born after his father's death, was like his mother, and that neither of them ever paid her any attention except when they wished to obtain money from her. It was shown that she had stated that the plaintiff was a spendthrift, and she would not leave him anything.   The fact that for some four years before the making of her will she resided with appellants does not furnish any proof of the

exercise by them of undue influence, and such influence cannot be assumed to exist by reason of their opportunity to exact the same.   It must be established affirmatively (Cudney v. Cudney, 68 N. Y. 148; Matter of McCarty, 141 App. Div. 816; Matter of Van Ness, 78 Misc. Rep. 603; Matter of Smith, 95 N. Y. 516, 522) and must be of a substantial nature.   (Thompson v. Peterson, 152 App. Div. 667; Smith v. Keller, 205 N. Y. 39, 44.)

There is no proof of any act of a substantial nature, or influence exerted or attempted to be exerted by any or either of the appellants tending to prove or warranting the inference of the exercise of undue influence over the testatrix.

The burden was upon the plaintiff of establishing by a fair preponderance of the evidence the incompetency of the testatrix at the time she executed her will, or the exercise of undue influence amounting—as the Court of Appeals said in the Smith-Keller Case (*supra*)—to coercion and duress.   The burden he failed to sustain, and the finding of the jury to the contrary is so greatly against the weight of the evidence that the judgment must be reversed for that reason.

In addition, the exceptions of the defendants to the admission and rejection of evidence during the trial present prejudicial and reversible error.

The depositions of the physicians who examined the testatrix in the incompetency proceeding in 1904, and the papers connected with that proceeding, consisting of twenty-three exhibits, were clearly incompetent and inadmissible.   (Bookman v. Stegman, 105 N. Y. 621.)   The depositions were not offered as admissions of deponents, who were present in court and sworn as witnesses, or to contradict them, but as part of plaintiff's case and upon the theory that they formed part of the *res gestæ*.   The incompetency of the testatrix in 1904 was not controverted, and the effect of that adjudication as raising a presumption of continuing incompetency was wholly destroyed by

the subsequent adjudication of December 28, 1905, of her competency.    The matter presented by the exhibits had no relevancy to the questions involved.    Permitting Dr. McGuire to testify that a brother of the testatrix died a maniac was error, and, although later stricken out, I do not think the error was cured.    The rule regulating the admission of such testimony is stated in Pringle v. Burroughs (185 N. Y. 375) to be that evidence of the insanity of ancestors or other relatives of a person whose sanity is called in question is not admissible except in support of proof of acts or language of an insane character on the part of the individual whose mental capacity is in question.    No such condition was presented when this evidence was received.    In his charge the court did not direct the attention of the jury to the evidence stricken out or instruct them that they were to disregard it.    The admission of this evidence may well have given the jury the impression that insanity was hereditary and prevalent in the Rintelen family, and the learned court ought to have instructed them to disregard this evidence.

The learned trial court was in error in sustaining the plaintiff's objection to the question asked Livett as to his conversations with the testatrix during the year preceding his becoming her attorney upon the ground that the witness was precluded from testifying by the provisions of section 835 of the Code of Civil Procedure.    That section relates only to communications made by a client to his attorney in the course of his professional employment, and prohibits the attorney from disclosing such communications or his advice given thereon.    The relation of attorney and client did not exist between the witness and the testatrix at the time to which the question was limited, and the question did not call for the disclosure of any communication by the witness.    It was a question to be answered " Yes " or " No," and its object undoubtedly was to show the opportunity the witness had, by observation and conversation with testatrix, to qualify him to say whether such conversations and acts impressed him as being rational or irrational.

The judgment and order should be reversed and a new trial granted, costs to abide the final award of costs.

JENKS, P. J., BURR, THOMAS and STAPLETON, JJ., concurred.

Judgment and order reversed and new trial granted, costs to abide the final award of costs.