Houck, J.
Action to set aside the will and codicil of James E. Lane, deceased, was brought by his only son and heir at law, Ray Lane, the defendant in error. The jury found against the will and codicil, and set same aside upon the ground of lack of mental capacity in testator at the time of their execution. The trial judge overruled a motion for a new trial, and entered a judgment on the verdict.
*322 Question: Is there error in the record prejudicial to the rights of the plaintiffs in error?
The following errors are relied upon for a reversal of the judgment below:
1. Error in the general charge of the trial judge to the jury.
2. Because the court refused to give, in charge to the jury before argument, special written request No. 3.
3. There was no evidence to sustain the verdict of the jury.
The conceded facts are as follows:
The testator died February 2, 1917, at the age of 52 years. The will was executed December 27,1916, and the codicil January 5,1917. A summary of the will and codicil is:
Will.
Item 1. Payment of debts, funeral expenses and erection of family monument costing not less than $2,000.
Item 2. To Nola Thompson, as a reward for her long and faithful service to the testator, lot No. 132, in Bremen, Ohio, and lot No. 38, in Purvis Addition to the same village.
Item 3. To Dr. Carl Brown, for his care and attention and great friendship to the testator, lot No. 50 in Bremen, Ohio.
Item 4. To Ray Lane, testator’s son, $1,000.
Item 5. Remainder of his estate to Dr. Carl Brown, who is also named executor in Item 6.
Codicil.
Item 1. For maintenance of burial lot, $500.
Item 2. Carl Hemler, $500.
*323 The gross estate real and personal of the testator is about $15,000.
Lot No. 38, devised to Nola Thompson, is of the value of $1,000, and lot No. 132 of the value of $2,800.
Lot No. 50, devised to Dr. Carl Brown, is of the value of $2,000.
The debts, funeral expenses, and collateral inheritance taxes, amount to about $2,000, leaving the net estate about $13,000.
Of this net estate Miss Thompson will receive, under the will, about $3,800, and Dr. Carl Brown approximately $5,000, because the legacies in money aggregate $4,000, which are to be paid before the remainder passes to him.
The testator and his wife separated about 30 years before his death, when their only child, Ray Lane, the defendant in error, was less than one year of age; they were living near Commercial Point, in Pickaway county, at the time of the separation.
The testator lived in Bremen and conducted a bakery business there for seven or eight years prior to his death, and his estate was accumulated there in that business. His whereabouts from the time of the separation between him and his wife until he became a citizen of Bremen does not appear.
Learned counsel for the plaintiffs, in error insist that there is prejudicial error in the general charge of the trial judge in the following instruction to the jury:
“The testator is empowered, under the law, to make a will, and to will his property to those who have natural claims upon his bounty; but if he does so he must possess sufficient mentality and sufficient intellectuality to know what he is doing, who are his relatives, the nature and extent of his property, and *324 the relationship that he bears to those who have natnral claims upon his bounty.”
It is urged that this instruction was intended to and did cause the jury to believe that a higher standard of mentality is required of a testator who makes disposition of his property to others than those related to him by blood.
We do not agree with counsel in this claim. There is nothing in the language of the instruction complained of that warrants or justifies the construction placed thereon by counsel. A fair interpretation of the language leads us to conclude that it does not directly or inferentially so state.
This is not all, for the court did not stop at the above instruction, but continued, as follows:
“Now, gentlemen of the jury, if he conveyed his property to a stranger, or if he conveyed it in unequal portions with reference to those who have no natural claims upon his bounty, you. cannot return a verdict setting aside the will for that reason, but j Ou are entitled to take that fact, if it be a fact, into consideration with all the other evidence in the case as to whether he possessed sufficient mentality at the time he executed this will and codicil to execute them. This will is in evidence and it is here for all purposes. You have a right to examine this will and codicil in all their terms and take into consideration all the facts and circumstances and all the evidence produced in the ease in considering whether it is a just or unjust will, whether it is fair or unfair.
“If you believe, again, that the will is unfair, that it is unjust, that it is inequitable, you cannot set it aside upon those grounds; but you will take its fairness or unfairness, its equitableness or inequitable *325 ness into consideration along with the other facts and circumstances in determining whether or not the testator at the time he executed the will and codicil would have so executed it if he had been of sound mind.”
A careful reading of this latter instruction clearly shows that the court fully and clearly explained to the jury the legal force and effect of a testator’s conveying by will his property, not only to his relations but to those who are not related to him by blood, as the same might reflect upon his mental capacity to do so at the time of the execution of his will; also as to the justness or unjustness, its equitableness or inequitableness; thus in clear, forceful and direct language telling the jury that such could only be taken into consideration along with all the other proven facts and circumstances in the case, in determining whether or not the testator at the time he executed the will and codicil was of sound mind and memory and capable in law of making a will.
Counsel strongly urge that the court prejudicially erred when it charged the jury as follows:
“The mental capacity required as a minimum in our state for the purpose of making a will is sufficient when the following characteristics exist:
“(1) To understand the nature of the business in which he is engaged.
“(2) To comprehend generally the nature and extent of his property.
“ (3) To hold in his mind the names and identity of those who have natural claims upon his bounty.
“ (4) To be able to appreciate his relation to such persons.”
We think the rule here laid down is sound, and the mere fact that the trial judge used the word “mini *326 mum” does not make the charge erroneous. The court did properly state the necessary requirements to be possessed by a testator to make a will, and, that being true, the mere fact that the court stated that it was the minimum requirement, and at the same time clearly defined and explained to the jury what in law is conceded to be such, is in no wise prejudicial to the rights of plaintiffs in error.
We find the rule to be well settled that a testator may have capacity to make a will, although not able to make contracts or manage his estate, or engage in and conduct large business interests. He may not have sufficient mind and vigor of intellect to transact business generally, or to make and understand all the parts of a business transaction, or to analyzé a contract, and yet be fully competent' and qualified to dispose of his property by will. The question is whether the testator’s mind and memory are sufficiently sound to enable him to understand the business in which he is engaged at the time he executes his will; to bear in mind the property he attempts to dispose of; to remember the objects of his bounty, and to plan or frame a scheme of disposition. The .siim and substance of this rule was given in the instruction complained of, and we are of the opinion that'it is the rule applicable to the minimum requirement of mentality necessary to make a valid will'in Ohio. The complaint of plaintiffs in error in this respect is not well taken.
It will further be observed that if there could be any possible ground for claiming that such instruction, standing alohe, might be misleading. or erroneous,. it is certainly swept away and the subject cleared up and made plain to the jury by the instruction immediately following:
*327 “That standard of capacity is the minimum required of men and women, and all persons in Ohio who may make a will. The law presumes that men. are sane rather than insane. So in the case at bar the burden is on the plaintiff under the rule of law. I have heretofore given you to establish that one or more or all of these requirements were lacking and absent in James E. Lane at the time that he executed this will on the 27th day of December, 1916, and the codicil perhaps on the 5th day of January,, 1917. * * * ‘Persons who have natural claims on the bounty of another are those who are his blood relations. The testator must realize that by the laws of civilization those who . are united to him by ties of blood have the first claim upon his considera-, tion. Be these relations near or remote, the testator is always chargeable with the degree of mental capacity sufficient to appreciate the fact that those united to him by ties of blood have natural claims upon his bounty. Those who are associated with business or other affairs have no natural claim upon his bounty at law. * * * The testator is empowered under the law to make a will and to will his property to those who have no natural claims upon his bounty, but if he does so, he must possess sufficient mentality and sufficient intellectuality to know what he is doing, who are his relations, the naturfe and extent of his property, and the relationship that he bears to those who have natural claims upon his bounty.”
It is urged that the trial court erred when it said to the jury: “Persons who have natural claims on the bounty of another are those who" are his blood relations.” Counsel say: “We respectfully urge upon the court that natural claims are not limited *328 to children and blood relations; the term fairly and properly includes all those who, under the circumstances in which testator finds himself, or sanely believes himself to be, are reasonably entitled to con- ■ sideration of his estate. Business associates- and friends may, and would in this case particularly, have such natural and reasonable claims on James E. Lane’s property. The persons who cared for the testator; such as the doctor who prolonged his life, and his employees who had assisted him in the accumulation of his property, had greater natural claims upon his bounty than the son who was almost a stranger to him. ’ ’
In the interpretation and construction of words and phrases, if they are of themselves precise, clear and unambiguous, no more can be necessary than to expound them in their natural and ordinary sense; and in such cases the words themselves best declare their meaning. Applying this rule to ascertain the meaning, force and effect in law of the language in question, we do not find this language ambiguous and are unable to reach the same construction as counsel for plaintiffs in error.
The question is, what is the common, usual and natural meaning conveyed by the expression or inquiry, “Who are the persons who have natural claims on the bounty of another?” It may be that an employe, a faithful servant, or a family physician, who have rendered some service to a person, are the objects of his bounty; but can it be claimed with any force or effect that they have any natural claims on his bounty?
The law, where one dies intestate, fixes the relatives of the decedent as the natural claimants of his bounty or estate. Then upon what course of rea *329 soiling it can be claimed that if one dies testate his relatives are not the natural objects of his bounty, we are unable to understand. True, a testator has a right by will, if he possesses the mental and other necessary qualifications, to dispose of his property as he likes, and to whom he chooses, whether they be related to him by blood or not.
Natural is an adjective and modifies claims. Then who are the natural claimants of a testator’s bounty? We are of the opinion that it is those related by consanguinity — blood relationship. It seems to us that this is the clear and ordinary interpretation, and is and should be the generally accepted meaning of the aforesaid expression, and we find and so hold.
We call attention to the following decisions in support of the finding thus made. In In re McCarty’s Will, 141 App. Div., 816, 126 N. Y. Supp., 699, the court held that a testator’s perception of his relation to the persons who should be objects of his bounty does not mean that he should know and recognize every distant relative who is entitled to inherit from him under the existing canons of descent; that the definition refers to near relations of a testator, those who are the natural objects of his bounty ; that cousins to the second, third, and fourth degree of propinquity are not included in the definition of “natural objects of testator’s bounty.”
And in Niemes v. Niemes, 97 Ohio St., 145, at page 157, the court says:
“But in any event, be these.relations near or remote, the testator is always chargeable with a degree of mental capacity sufficient to appreciate the fact that those united to him by the ties of blood have natural claims upon his bounty.
*330 “These natural claims can of course be ignored; only however by those who, while fully understanding, yet choose to disregard them.”
It will not do to simply take excerpts from a charge and insist that same are erroneous and prejudicial, but the whole charge with reference to the subject-matter claimed as being erroneous must be .examined, and all that the charge contains upon such subject must be inquired into and reviewed. And if from the entire charge prejudicial error is shown, then a reversal should be entered.
After a careful reading and examination of the trial judge’s .charge in this case we .find same to fully and completely cover every evidential fact established by the evidence, the issues raised in the case, and the law applicable to same.
We are fully convinced that our supreme court has passed upon the identical question here raised, and that we are but following it and the rule of law announced in the fifth proposition of the syllabus of the case of Ohio & Indiana Torpedo Co. v. Fishburn, 61 Ohio St., 608, which reads:
“A charge to a jury is to be construed as a whole, and if, construing the Avhole charge, the law of the ease appears to have been correctly given to the jury, and in a way that will reasonably enable them to understand the rules of law which they are to apply to the evidence before them, the charge will not be held erroneous simply because every condition to a recovery or a defense is not embraced in each paragraph, and the paragraph excepted to is not in itself calculated to mislead.”
' We find that the general charge of the trial judge follows the law as laid doAvn in the case of Niemes v. Niemes, supra, which is the last word of our supreme *331 court upon the question of the mental capacity required to make a will.
Did the court err in refusing to give to the jury, before argument, written charge No. 3, as requested by the defendants below, which reads:
“You are instructed that a man who is competent and free from restraint has a right to dispose of his estate in any way he may deem best. He is not required to make an equitable will, and he may, if he choose, entirely exclude his children.”
This request is taken from the language used in the opinion in the case of Wilson v. Wilson, 14 C. C., N. S., 241.
It must be apparent to counsel, as well as to the court, that there are many things said by reviewing courts, in their opinions, that are sound in law, but which nevertheless would be and are improper if adopted as instructions to a jury. The right of parties to have proper written instructions given to a jury before argument enables counsel to present in argument to the jury the facts in accordance with the law, as embodied in such written instructions so given. Mere abstract propositions of law, where not applicable to the issues raised, the proven facts and the rules of law necessary for their determination, need not be given. Such requests to charge must also be complete, and state the law correctly and clearly within themselves, and be pertinent to at least one of the issues to be determined in the case. Applying this rule to the request in question, we find and hold that it does not come within the rule herein laid down, for the following reasons:
(a) The same is indefinite and uncertain, and is incomplete. It assumes that the maker of the will is competent, and this is the one question of fact *332 which the jury is to determine. This is the crux of the case, and the very purpose for which the jury was impaneled, namely, to find by its verdict whether or not James E. Lane was of sound mind and memory.
(b) It further assumes that the man making the will was of proper age, and not under duress.
(c) The request to charge as a whole does not come within the rule, and therefore all must fall.
Lastly, does the record disclose any evidence to sustain the verdict of the jury?
We have read with much care all of the evidence as contained in the record, and we have no hesitancy in saying that we must and do answer this question in the affirmative.
The jury having passed upon the weight and sufficiency of the evidence, and having found against the plaintiffs in error, it is not within the province of a reviewing court to disturb this finding, unless we find from all the facts and circumstances, as disclosed in the record, that there is no evidence supporting the verdict, or that the verdict is manifestly against the weight of the evidence. And not so finding in either instance, we must and do affirm the judgment of the common pleas court.

Judgment affirmed.

Patterson and Shields, JJ., concur.